UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
XAVIER BRADLEY,

                  Plaintiff

-against-

**THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER RANDY SANCHEZ**, in his official capacity as a New York City Police Officer and as an individual, **POLICE OFFICER CARLOS HERRERA**, in his official capacity as a New York City Police Officer and as an individual, **POLICE OFFICER CONWAY HUGHES**, in his official capacity as a New York City Police Officer and as an individual, **SERGEANT MICHAEL DEMONDA**, in his official capacity as a New York City Police Sergeant and as an individual, and **JOHN DOES 1 TO 5**, in their official capacity as New York City Police Officers/Detectives and as individuals.

                  Defendants.
-------------------------------------------------------------------x

Index No.

**COMPLAINT**

Jury Trial Demanded

## NATURE OF ACTION

1.      This is a civil rights action in which Plaintiff Xavier Bradley seeks relief for violations of rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983; and, of rights secured by the Fourth and Fourteenth Amendments to the U.S. Constitution; and, for rights secured under the laws and constitution of the State of New York. Plaintiff seeks damages, compensatory and exemplary, an award of costs and attorneys' fees, and such other and further relief as this Court deems just and proper.

2.      This civil rights action arises from the New York City Police Department's wrongful arrest of Xavier Bradley and the manufacture of evidence against him.

3.     A team of plainclothes anti-crime police officers arrested Bradley in the early hours of August 26, 2018, in Brooklyn following an all-day block party sponsored by Spike Lee.

4.     The team of plainclothes anti-crime police officers manufactured evidence against Bradley, framing him for possessing a firearm.

5.     Bradley's false arrest led to his malicious criminal prosecution by the Kings County District Attorney for crimes classified as violent felonies requiring a mandatory minimum prison sentence.

6.     One police officer involved in Bradley's arrest gave perjured testimony to the Grand Jury and during the pre-trial hearing and a second police officer gave perjured testimony during the pre-trial hearing.

## THE PARTIES

7.     Plaintiff Xavier Bradley is a citizen of the United States and at all relevant times to this complaint, Plaintiff was a resident of New York City.

8.     Defendant City Of New York ("City") is a municipal corporation within the State of New York.  Under § 431 of the New York City Charter, the City of New York established and maintains the New York City Police Department ("NYPD") a constituent department or agency.

9.     At all relevant times, the City employed the police personnel involved in the acts underlying this lawsuit.

10.     Defendants Police Officer Carlos Herrera, Police Officer Randy Sanchez, Police Officer Conway Hughes, Police Sergeant Michael Demonda and NYPD employees John Does 1 to 5 were at all times relevant to this complaint, duly appointed and acting police officers employed by the NYPD.

11.     At all times relevant to this complaint, Defendants acted under the color of state law.

12.     A Notice of Claim was filed within 90 days of the occurrence alleged herein.

13.     More than 30 days have elapsed since the Notice of Claim was served upon the Defendants and Defendants have neglected or refused to make any adjustment or payment thereof.

14.     This action is commenced within one year and 90 days after the cause of action arose.

## JURISDICTION AND VENUE

15.     Jurisdiction is conferred by 28 U.S.C. § 1343, which provides for original jurisdiction of this Court in suits authorized under 42 U.S.C. § 1983, to redress the deprivation (under color of state law, statute, ordinance, regulation, custom or usage) of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens of all persons within the jurisdiction of the United States.

16.     This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

17.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

18.     On August 26, 2018, at approximately 1:10 a.m., Bradley was walking south on Malcolm X Boulevard in the Bedford-Stuyvesant neighborhood of Kings County. At the time the streets were crowded with people following a block party sponsored by Spike Lee. As Bradley

was walking south on Malcolm X Boulevard, he was speaking on his cellphone, which he held to his ear with one of his hands.

19.     While Bradley was walking between Lexington Avenue and Quincy Street on Malcolm X Boulevard, an unmarked silver-colored four-door sedan abruptly pulled up to stop in front of Bradley's path. A man wearing plain clothes exited the vehicle from the front passenger side and aggressively told Bradley to approach the vehicle.

20.     At this time Mr. Bradley did not possess a firearm, any other weapon or any object that could be construed as a weapon.

21.      Bradley immediately feared for his safety because he did not know the man who exited the vehicle or anybody inside the vehicle. After his arrest, Bradley learned that the man who commanded him to approach the vehicle was Police Officer Randy Sanchez.  No lights or sirens were visible or audible on or from the unmarked sedan nor did the sedan bear any NYPD markings.

22.     As a result of his fear, Bradley then began running north on Malcolm X Boulevard. Police Officer Sanchez chased after Bradley on foot.

23.     After crossing Lexington Avenue and halfway up the block towards Green Avenue on Malcolm X Boulevard, Mr. Bradley observed the same unmarked sedan pull in front of him and come to an abrupt stop blocking his path for the second time. No lights or sirens were visible or audible on or from the unmarked sedan. A second man then exited a rear door of the sedan and began chasing Bradley. The second man did not identify himself upon exiting the sedan. After his arrest, Bradley learned that the second man to exit the vehicle and chase him was Police Officer Carlos Herrera and that the man driving the unmarked sedan was Police Officer Hughes.

24.     With his path blocked a second time by the sedan, Bradley reversed direction and ran south on Malcolm X Boulevard as the two men chased him on foot. As Bradley ran south, he was also pursed by the unmarked sedan driven by Police Officer Hughes.

25.     While running south on Malcolm X Boulevard, Bradley crossed Lexington Avenue and Quincy Street. Bradley was still being pursued by the two men on foot and the unmarked sedan. Between Quincy Street and Gates Avenue on Malcolm X Boulevard, Bradley ran toward a playground located a short distance away from where he hoped that people would be gathered.  He believed that the gathering of people might dissuade his unknown pursuers from committing any violence against him.

26.     Bradley stopped running in a playground located behind 865 Gates Avenue, where, as he had hoped, people were gathered.  Police Officer Herrera and Police Officer Sanchez appeared, finally identified themselves as police and placed Bradley in handcuffs. Police Officer Hughes, driving the unmarked sedan, arrived moments later behind 865 Gates Avenue. Several other plainclothes and police in uniform arrived moments after Police Officer Hughes.

27.     The officers did not tell Bradley why they placed him in handcuffs.

28.     Sergeant Michael Demonda was also present at the time of Bradley's arrest and he approved of the arrest despite the manufacture of evidence against Bradley.

29.     Approximately 30 minutes later, Bradley was told that he was arrested for alleged possession of a firearm.

30.     Bradley did not possess a firearm, any weapon, any other weapon or any object that could be construed to be a weapon on August 26, 2018, at approximately 1:10 a.m., or immediately before his contact with the men who turned out to be police.

31.     Following his arrest, Police Officer Herrera signed a criminal complaint, under the penalty of perjury, which charged Bradley with Criminal Possession of a Weapon in the Second Degree, Penal Law § 265.03, and related firearms charges, as well as Littering, in violation of  New York City Administrative Code Section 16-118(6).

32.     The criminal complaint stated that Police Officer Herrera was informed by Police Officer Sanchez that Police Officer Sanchez observed Bradley urinating on a public sidewalk. The allegation is false.

33.     The criminal complaint further stated that Police Officer Herrera was informed by Police Officer Sanchez that Police Officer Sanchez observed Bradley drop a gun to the ground. The allegation is false.

34.     Bradley was arraigned in New York City Criminal Court, Kings County, on the charges in the criminal complaint on or about August 26, 2018. Bradley was held on bail in the amount of $20,000.00. However, Bradley was innocent of all the charges.

35.     On August 27, 2018, bail was paid by bond and Bradley was released.

36.     On September 26, 2018, a Grand Jury indictment was filed in Kings County charging Bradley with Criminal Possession of a Weapon in the Second Degree and related charges.

37.     On October 15, 2018, Bradley was arraigned in Kings County Supreme Court on the felony indictment where he pleaded not guilty. To reiterate, Bradley was innocent of all charges.

38.     During the pendency of Bradley's criminal prosecution in Supreme Court, he was forced to make 11 additional appearances until pre-trial hearings commenced on October 1, 2019.

## **PERJURED SWORN TESTIMONY DURING BRADLEY'S PROSECUTION**

39.     On or about September 11, 2018, during Grand Jury Testimony, Police Officer Herrera intentionally gave false testimony while under oath about the circumstances of Bradley's arrest.

40.     Police Officer Herrera intentionally falsely testified that he observed Bradley urinating, or making any gesture that could be construed as urinating, upon first contact with Bradley on Malcolm X Boulevard.

41.     However, the criminal complaint states that Police Officer Herrera did not observe that Bradley was urinating on a public sidewalk, rather it states that Police Officer Herrera was informed of that false allegation by Police Officer Sanchez.

42.     Police Officer Herrera intentionally falsely testified that as he was chasing Bradley, in a position behind Bradley, that he observed Bradley reach into his waistband.

43.     Police Officer Herrera intentionally falsely testified that as he was chasing Bradley running southbound on Malcolm X Boulevard, he observed Bradley remove a firearm from his pants and drop it on the ground.

44.     Police Officer Herrera intentionally falsely testified that after Bradley was placed under arrest, he brought Bradley to the location where he claimed that Bradley dropped a firearm.

45.     Police Officer Herrera intentionally falsely testified that he and Bradley observed Police Officer Sanchez recover a firearm on Malcolm X Boulevard.

46.     On October 1, 2019, a pre-trial *Dunaway/Mapp/Huntley* hearing commenced before Justice William Harrington of Kings County Supreme Court.

47.     During the pre-trial hearing, Police Officer Herrera intentionally gave false testimony while under oath about the circumstances of Bradley's arrest.

48.     Once again, Police Officer Herrera falsely testified that he observed Bradley urinating in street, whereas, the criminal complaint states that he was informed of that false allegation by Police Officer Sanchez.

49.     Police Officer Herrera falsely intentionally testified that after Bradley initially ran north on Malcolm X Boulevard, while he was behind Bradley, he observed Bradley running while holding his exposed penis in his hand.

50.     Police Officer Herrera intentionally falsely testified that Police Officer Sanchez stated that he observed Bradley urinating on Malcolm X Boulevard between Lexington Avenue and Quincy Street.

51.     Police Officer Herrera intentionally falsely testified that Police Officer Sanchez identified himself as police to Bradley upon first seeing Bradley.

52.     Police Officer Herrera intentionally falsely testified that while he saw Bradley running northbound on Malcolm X Boulevard while he was behind Bradley, he observed Bradley holding something in his front waistband.

53.     Police Officer Herrera intentionally falsely testified that while he saw Bradley running southbound on Malcolm X Boulevard while he was behind Bradley, he observed Bradley remove an L-shaped metal object from his waistband and throw it on the ground.  Police Officer Herrera also falsely testified that that firearm that he claimed Bradley dropped was recovered in the same place where Bradley was first observed, on Malcolm X Boulevard between Lexington Avenue and Quincy Street.

54.     Police Officer Herrera intentionally falsely testified that he observed Police Officer Sanchez tell Bradley to drop a firearm.

55.     Police Officer Herrera testified that he and Police Officer Sanchez arrested Bradley behind 865 Gates Avenue and Police Officer Conway arrived driving the sedan soon after.

56.     Police Officer Herrera testified that Bradley was brought directly to a police precinct and not to the location where police claimed that he dropped a firearm, as he intentionally falsely testified in the Grand Jury.

57.     During the pre-trial hearing, Police Officer Sanchez intentionally gave false testimony while under oath about the circumstances of Bradley's arrest.

58.     Police Officer Sanchez intentionally falsely testified that he observed Bradley standing on Malcolm X Boulevard between Lexington Avenue and Quincy Street with the front of his pants lowered.

59.     Police Officer Sanchez intentionally falsely testified that he identified himself as police upon exiting the sedan when first approaching Bradley.

60.     Police Officer Sanchez intentionally falsely testified that his police shield was displayed outside of his clothing upon first contact with Bradley.

61.     Police Officer Sanchez intentionally falsely testified that while Bradley was running from Police Officer Sanchez northbound on Malcolm X Avenue, Police Officer Sanchez observed Bradley reach into his waistband while he was behind Bradley.

62.     Police Officer Sanchez intentionally falsely testified that he observed Bradley remove a firearm from his waistband and drop it on Malcolm X Boulevard between Greene Avenue and Lexington Avenue right before Bradley turned and ran southbound.

63.     Police Officer Sanchez intentionally falsely testified that after Bradley was arrested behind 865 Gates Avenue that he ran back to the place where he claimed Bradley turned to run south on Malcolm X Boulevard and he recovered a firearm.

64.     Following the pre-trial hearing on October 1, 2019, Bradley was forced to appear in Supreme Court on November 15, 2019, and December 13, 2019, when Judge Harrington released his pre-trial hearing decision finding that police lacked reasonable suspicion or probable cause to pursue Bradley alluding to incredible hearing testimony, "The only reasonable inference from the hearing testimony is that the defendant's exposed penis was not observed until after the pursuit commenced… PO Herrera's testimony establishes that he saw the defendant's penis only after the defendant 'took off running.'" Judge Harrington granted Bradley's motion to suppress physical and statement evidence.  Bradley's case was adjourned to February 7, 2020.

65.     On February 7, 2020, the indictment and all charges against Bradley were dismissed on motion of the Kings County District Attorney.

66.     Since the dismissal of the criminal prosecution, Bradley has had great difficulty in securing gainful employment.

67.     As a result of Bradley's false arrest, malicious prosecution and manufacturing of evidence against him over six months he and since the dismissal of the criminal prosecution he has suffered continued emotional distress and financial harm.

68.     The unlawful conduct of the NYPD violated federal and New York laws and entitles Bradley to compensatory and punitive damages under 42 U.S.C. § 1983, a federal statute authorizing a civil rights lawsuit based on such conduct.

<u>**FIRST CAUSE OF ACTION**</u>
**(False Arrest Under State Law; All Defendants)**

69.     Plaintiff realleges and Plaintiff repeats and realleges each and every previous

allegation contained in this Complaint and incorporates them here.

70.     Defendants, individually and acting in concert and/or aiding and abetting each other, intended to confine Plaintiff.

71.     Defendants did not have probable cause to arrest Plaintiff.

72.     Plaintiff was conscious of that confinement and did not consent to it.

73.     The confinement was not privileged and made in disregard of overwhelming evidence of Plaintiff's innocence.  As a result of Defendants' actions, Plaintiff suffered damages.

## SECOND CAUSE OF ACTION
**(Malicious Prosecution Under State Law; All Defendants)**

74.     Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

75.     By virtue of the foregoing, Defendants, acting in concert with and aiding and abetting each other and with additional persons for whose acts they are liable, initiated, continued and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

76.     The criminal proceedings terminated in Plaintiff's favor.

77.     There was no probable cause for the commencement or the continuation of the criminal proceedings.

78.     Defendants acted with actual malice.

79.     The City is liable for Defendants' actions under the principle of *respondeat superior*.

## THIRD CAUSE OF ACTION
**(Negligent Hiring, Training and Supervision; Defendant City of New York)**

80.     Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

81.     By virtue of the foregoing, Defendant City of New York is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or grossly negligent hiring, retention and supervision of its agents, servants and/or NYPD employees about their duties, including:

      (a)     the standards for probable cause to effectuate an arrest;

      (b)     the duty not to use false, misleading or unreliable evidence;

      (c)     the continuing obligation to correct false, inaccurate, incomplete or misleading evidence and statements;

      (d)     maintaining a criminal prosecution when there is evidence that in fact no crime was committed; and

      (f)     the continuing duty to obtain, to preserve and to make timely disclosure to the appropriate parties, including the court and prosecutors, during criminal investigations and prosecutions, of all material evidence or information favorable to a person suspected, accused or convicted of criminal conduct, including exculpatory evidence as well as evidence impeaching the credibility or undercutting the reliability of prosecution witnesses and including verbal as well as recorded information.

82.     Policymaking and supervisory officials for The NYPD and the City had legal and constitutional obligations to prevent their employees from violating the above duties. Those policymakers and officials had knowledge and notice that adequate policies regarding hiring, retention and supervision were necessary with respect to rank and file police officers and their supervisors and that failing to implement such policies would result in the violation of the constitutional rights of individuals investigated and arrested by the NYPD.

83.     By virtue of the foregoing, Plaintiff suffered actual damages foregoing, Plaintiff suffered actual damages.

<u>**FOURTH CAUSE OF ACTION**</u>
**(Wrongful Arrest And Detention Under The Fourth Amendment**
**and *Manuel v. City of Joliet,* 137 S.Ct. 911 (2017); All Defendants)**

84.     Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

85.     Defendants, without probable cause, and in disregard of overwhelming evidence of Plaintiff's innocence, wrongfully arrested and detained him.

86.     Defendants, in absence of probable cause for Plaintiff's continued seizure, continued the seizure by submitting the false felony complaint to prosecutors and the Kings County Criminal Court, which continued the charges against Plaintiff and his detention and/or seizure, requiring Plaintiff to repeatedly appear in court to defend against the charges over 18 months.

87.     By virtue of the foregoing, Defendants are liable for Plaintiff's wrongful arrest and detention, and the damages set forth above.

## FIFTH CAUSE OF ACTION
### (42 U.S.C. §1983;   Malicious Prosecution and Deprivation of  Liberty Under the Fourth, Fifth, Sixth, and Fourteenth Amendments; All Defendants)

88.     Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

89.     The individual Defendants, by virtue of the foregoing, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

90.     The criminal proceedings terminated in Plaintiff's favor.

91.     There was no probable cause for the commencement or the continuation of the criminal proceedings.

92.     The Defendants acted with actual malice.

93.     The aforesaid conduct operated to deprive Plaintiff of his rights under the

Constitution and the laws of the United States:

   (a)   Not to be arrested, prosecuted, detained, or imprisoned based upon false,
         fabricated, manufactured, misleading, or inherently unreliable "evidence,"
         including false allegations in violation of the Fourth and Fourteenth
         Amendments, and the Due Process and Fair Trial Clauses of the Fifth,
         Sixth and Fourteenth Amendments, to the U.S. Constitution; and

   (b)   Not to be deprived of his liberty absent probable cause to believe he has
         committed a crime, in violation of his rights under the Fourth and
         Fourteenth Amendments to the U.S. Constitution.

94.     The foregoing violations of Plaintiff's federal constitutional rights by the

Defendants, together with their co-conspirators and accomplices, known and unknown, directly,

substantially, proximately, and foreseeably caused the continuation of Plaintiff's malicious

prosecution without probable cause, and his other injuries and damages.

95.     The foregoing violations of Plaintiff's rights amounted to Constitutional torts and

were affected by actions taken under color of state law, and within the scope of the Defendants'

employment and authority.

96.     Defendants committed the foregoing violations of Plaintiff's rights knowingly,

intentionally, willfully, recklessly, negligently, and/or with deliberate indifference to Plaintiff's

constitutional rights.

97.     By reason of the foregoing, the Defendants are liable for the damages set forth

above.

### SIXTH CAUSE OF ACTION
**(Evidence Manufacturing; Denial of A Fair Trial Under The Fifth,
Sixth, and Fourteenth Amendments; All Defendants)**

98.     Plaintiff realleges and Plaintiff repeats and realleges each and every previous

allegation contained in this Complaint and incorporates them here.

99.     Police Officer Sanchez and Police Officer Herrera acting in concert and aiding and abetting the other, created false police reports and felony complaint reports falsely claiming that they observed Plaintiff urinating or that he appeared to be urinating on a public street.

100.    Police Officer Sanchez, Police Officer Herrera, Police Officer Hughes and Sergeant Demonda acting in concert and aiding and abetting the other, created false police reports and felony complaint reports falsely claiming that Plaintiff possessed a firearm.

101.    The misleading information contained in those false reports and the information omitted from them was likely to influence a jury's decision.

102.    Those Defendants then forwarded those reports to prosecutors who in turn relied on them to commence formal criminal proceedings against Plaintiff.

103.    Defendants' actions deprived Plaintiff of his right to not be prosecuted on fabricated evidence, and to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, and were the proximate cause of Plaintiff's injuries.

### SEVENTH CAUSE OF ACTION
**(Failure To Intervene; 42 U.S.C. § 1983; Fourth, Fifth and Fourteenth Amendments; Police Officer Sanchez, Police Officer Herrera, Police Officer Hughes, Sergeant Demonda and John Does 1-5)**

104.    Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

105.    Defendants, who were present at the scene and had direct knowledge of the violation of Plaintiff's Fourth, Fifth and Fourteenth Amendment rights through his wrongful arrest and detention, and malicious prosecution, exhibited deliberate indifference and/or gross negligence concerning Plaintiff's rights by failing to intervene to prevent the violation of those rights by their peers and subordinates, even though they had legal and constitutional obligations to do so.

106.     Rather than intervene, Defendants directly participated in, ratified, and aided and abetted, the violation of Plaintiff's constitutional rights as set forth above.

107.     Each of the Defendants had a realistic opportunity to intervene and prevent the harm Plaintiff suffered, a reasonable person in Defendants' positions would know that Plaintiff's rights were being violated, and none of the Defendants took reasonable steps to intervene.

108.     The Defendants, by virtue of the foregoing, are liable for the damages set forth above.

### EIGHTH CAUSE OF ACTION
**(Claim Under *Monell v. Department of Social Services*, 436 U.S. 658
(1978) against City for actions of the NYPD)**

109.     Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

110.     The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to the City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

111.     Prior to Plaintiff's arrest, policymaking officials at the NYPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and Defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

(a)     The determination of probable cause to make an arrest;

(b)      the duty not to use false, misleading or unreliable evidence; and

(c)     The continuing duty of police investigators to preserve and to make timely disclosure to the District Attorney, during criminal investigations and prosecutions, of all material evidence or information ("*Brady* material") favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts and evidence that a prosecution witness has a motive, bias or interest affecting his credibility or has been pressured or coerced so that the District Attorney could comply with his constitutional obligation to disclose such information to the defense under *Brady*.

119.    The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the City, including but not limited to, the New York City Police Commissioner, who knew (or should have known):

(a)     to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

(b)     that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision  will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

(c)     that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

112.    Those policymakers and officials had knowledge and notice that adequate policies regarding hiring, retention and supervision were necessary with respect to rank and file police officers and their supervisors, and that failing to implement such policies would result in the violation of the constitutional rights of individuals investigated and arrested by the NYPD, based upon, among other things:

(a)     credible allegations, many substantiated by judicial decisions, finding NYPD officers had wrongfully withheld material evidence or knowingly given false or misleading testimony, and lawsuits settled by the City for substantial sums based on malicious prosecution claims, (concerning which the NYPD did not investigate the alleged misconduct by the suspect employees) (*see* Exh. B appended and incorporated herein by reference, listing some of those decisions and settlements);

(b)     numerous decisions of the U.S. Supreme Court, the U.S. Court of Appeals for the Second Circuit, the New York Court of Appeals, and the New York Appellate Division, discussing the difficult issues that regularly arise under *Brady* as well as  the probable cause requirement of the Fourth Amendment;

(c)     judicial decisions directly criticizing the NYPD for failing to train and supervise officers in their *Brady* obligations and for failing to adopt adequate *Brady* disclosure policies, *see Carter v. Harrison*, 612 F. Supp. 749 (E.D.N.Y. 1985) (McLaughlin, D.J., adopting the Report and Recommendation of then Magistrate Shira A. Scheindlin), and putting the NYPD on notice that the City could be held liable for its failure to adequately train police officers and investigators regarding their obligations to provide truthful testimony and to disclose evidence that favors criminal defendants under *Brady*, *see Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), and *Carter v. Harrison, supra*;

(d)     formal reports of the New York City Comptroller's Office and the Bar Association of the City of New York criticizing the NYPD and the New York City Law Department for failing to follow up substantial civil settlements for police misconduct with disciplinary or other remedial action;

(e)     the "Mollen Report," a 1994 NYC government report on corruption in the NYPD, *see Collins v. City of New York*, 923 F. Supp.2d 462, 478 (E.D.N.Y. 2013) (Block, J.);

(f)     overwhelming media coverage concerning the problem of NYPD officers lying and the NYPD's failure to address the issue, *see Cordero v. City of New York*, 15-CV-3436, Memorandum and Order, Oct. 17, 2017, pp. 4,  22. n. 1 & 2 (E.D.N.Y.) (Weinstein, J.) (citing a plethora of newspaper articles giving the NYPD notice of the problem and holding PLAINTIFF produced sufficient evidence for a jury to conclude the NYPD's failure "to take reasonable steps to control lying by police officers is a policy of the NYPD."); and

(g)     the inherent obviousness of the need to supervise and discipline police officers in such obligations to counteract the pressure on officers and the

powerful incentives they have to close cases and to obtain arrests and convictions.

113.    Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the interrogation of witnesses, the initiation of criminal prosecutions, and the disclosure of Brady material.

114.    The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority and constitutes a City policymaker for whom the City is liable, with respect to compliance by NYPD employees with the above-mentioned constitutional requirements.

115.    During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

116.    The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Defendants of Plaintiff's rights under the Constitution and laws of the United States.

117.     By virtue of the foregoing, Defendant City of New York is liable for having

substantially caused the foregoing violations of Plaintiff's constitutional rights and his

constitutional injuries and causing Plaintiff to suffer the actual damages identified herein.

### NINTH CAUSE OF ACTION
**(Negligent Hiring, Training, and Supervision Under State
Law; Defendant City of New York)**

118.     Plaintiff realleges and Plaintiff repeats and realleges each and every previous

allegation contained in this Complaint and incorporates them here.

119.     By virtue of the foregoing, Defendant City of New York is liable to Plaintiff

because of its intentional, deliberately indifferent, careless, reckless, and/or grossly negligent

hiring, retention, and supervision of its agents, servants and/or NYPD employees with regard to

their duties, including:

    (a)     the duty not to use false, misleading or unreliable evidence;

    (b)     the continuing obligation to correct false, inaccurate, incomplete or
misleading evidence, and statements; and

    (c)     the continuing duty to obtain, to preserve, and to make timely disclosure to
the appropriate parties, including the court and prosecutors, during
criminal investigations and prosecutions, of all material evidence or
information favorable to a person suspected, accused or convicted of
criminal conduct, including exculpatory evidence as well as evidence
impeaching the credibility or undercutting the reliability of prosecution
witnesses, and including verbal as well as recorded information.

120.     Policymaking and supervisory officials for the New York City Police Department

and the City had legal and constitutional obligations to prevent their employees from violating

the above duties.

121.     Those policymakers and officials had knowledge and notice that adequate policies

regarding hiring, retention and supervision were necessary with respect to rank and file police

officers and their supervisors, and that failing to implement such policies would result in the

violation of the constitutional rights of individuals investigated and arrested by the NYPD, based upon, among other things, the facts set forth above.

122.    By virtue of the foregoing, Plaintiff suffered the actual damages identified above.

## DAMAGES DEMAND

WHEREFORE, PLAINTIFF demands judgment against Defendants as follows:

a.    For compensatory damages of not less than $250,000;

b.    For punitive damages against the individual Defendants of $750,000;

c.    For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. §1988 and to the inherent powers of this Court;

d.    For pre-judgment interest as allowed by law; and

e.    For such other and further relief as this Court may deem just and proper.

DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues raised herein

DATED:    New York, New York
September 15, 2020

Andrew M. Stengel, Esq.
The Law Firm of Andrew M. Stengel, P.C.
11 Broadway, Suite 615
New York, NY 10004
(212) 634-9222

*Attorneys For Plaintiff Xavier Bradley*